## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| GREENEARTH® CLEANING, L.L.C., d/b/a GREENEARTH® CLEANING,<br><br>    Plaintiff,<br><br>v.<br><br>KINGS PARK GREEN CLEANERS, LLC,<br>    Serve: Samuel S. Oh<br>           8008 Greenwich Woods Dr.<br>           McLean, VA 22102<br><br>    Defendant. | Case No. _____ |

## PETITION

GreenEarth® Cleaning, L.L.C. d/b/a GreenEarth® Cleaning for its Petition against Kings Park Green Cleaners, LLC, states and alleges as follows:

### Parties, Jurisdiction and Venue

1. GreenEarth® Cleaning, L.L.C. (hereinafter referred to as "GreenEarth") is a Delaware Limited Liability Corporation, also doing business as GreenEarth® Cleaning, with its principal place of business at 51 W. 135th Street, Kansas City, Missouri 64145.

2. GreenEarth is the assignee of all contracts, licenses, licensed products, licensed processes, patents, trademarks, tradenames and intellectual property rights and holds all rights, title and interest in and to said contracts, licenses, licensed products, licensed processes, patents, trademarks, tradenames and intellectual property which is the subject of GreenEarth's claims herein.

3. Kings Park Green Cleaners, LLC (hereinafter referred to as "Kings Park") is a Virginia limited liability company doing business in Springfield, Virginia as a drycleaning

business, and a former licensee of GreenEarth's intellectual property, with a store location at: 8958 Burke Lake Road, Springfield, Virginia 22151.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this judicial district; because Kings Park is subject to personal jurisdiction in this judicial district; and the parties' agreements provide for venue in this Court.

5. This Court has jurisdiction over the subject matter of the Petition pursuant to 15 U.S.C. § 1121; 28 U.S.C. § 1331; 28 U.S.C. § 1338; and 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Kings Park because the parties entered into a contract in the State of Missouri, and Kings Park specifically consents in the parties' agreement to the jurisdiction of this Court.

**Common Allegations to all Claims**

7. Since at least August 24, 1999, GreenEarth has owned numerous patents for the use of liquid silicone as a drycleaning solvent.

8. GreenEarth has registered its patents with the USPTO as summarized in the following table:

| Case Number | Patent Number | Country | Status |
|---|---|---|---|
| 43732 | 5,865,852 | U.S.A. | Granted |
| 43733 | 5,942,007 | U.S.A. | Granted |
| 43734 | 6,063,135 | U.S.A. | Granted |
| 43735 | 6,042,618 | U.S.A. | Granted |
| 43736 | 6,056,789 | U.S.A. | Granted |

| 43737 | 6,042,617 | U.S.A. | Granted |
|---|---|---|---|
| 43738 | 6,086,635 | U.S.A. | Granted |
| 43739 | 6,059,845 | U.S.A. | Granted |
| 57678 | 8,123,819 | U.S.A. | Granted |
| 521734 | | U.S.A. | Pending |
| 523949 | | U.S.A. | Pending |

9. The patents ("Patents") are presently in force. A copy of the base patent, Patent Number 5,942,007 is attached hereto as **Exhibit 1.** The remaining patents are variations of Patent Number 5,942,007.

10. Since at least as early at 1999, GreenEarth has used the trademark GREENEARTH with liquid silicone drycleaning services.

11. GreenEarth has registered the GREENEARTH standard character trademark, its leaf and water droplet design mark and the IT'S GOOD FOR EVERYBODY standard character trademark with the USPTO as summarized in the following table:

| Trademark | Classes | Registration Number | Date of Registration |
|---|---|---|---|
| GREENEARTH | 35 and 37 | 2,413,095 | December 12, 2000 |
| DESIGN ONLY (GreenEarth - Leaf and Water Droplet) | 35 and 37 | 2,496,831 | October 9, 2001 |
| IT'S GOOD FOR EVERYBODY | 35 and 37 | 2,488,599 | September 11, 2001 |

11. These trademarks (the "Marks") are alive, in good standing, unrevoked, are deemed incontestable, serving as *prima facie* evidence of GreenEarth's ownership of

3

the Registered Marks, their validity, and GreenEarth's exclusive right to use them in connection with the services identified therein.

12. The Marks have been used for an extensive amount of time - for 15 years - and GreenEarth has expended substantial amounts of money promoting its Marks, further evidence that the Marks serve to identify GreenEarth as the source of services that bear the Marks.

### Kings Park's Infringing and Unfair Conduct

13. On August 30, 2013, GreenEarth entered into a Letter of Understanding ("Contract") with Kings Park. A copy of the Letter of Understanding is attached hereto as **Exhibit 2.**

14. Pursuant to the Contract, GreenEarth licensed Kings Park to use its Intellectual Property in connection with the operation of Kings Park's dry cleaning businesses, and GreenEarth agreed to and did grant Kings Park certain rights in and to such Intellectual Property.

15. Under the terms of the Contract, the Network Affiliate Rules ("Network Rules") became a part of the contract and were incorporated by reference therein into the Contract. A copy of the Network Affiliate Rules is attached hereto as **Exhibit 3.**

16. According to Paragraph 2 of the Contract, GreenEarth granted to Kings Park a "limited term, nontransferable, and non-exclusive license to:

   a. Utilize our Intellectual Property during the Term at your plant locations where dry cleaning is processed using the Licensed Processes, Licensed Equipment and Licensed Products in the number of dry cleaning machines and transfer recovery dryers as shown in Exhibit A enclosed with hit Letter of Understanding

   b. Utilize our Intellectual Property during the Term at your dry store locations as shown in Exhibit A where dry cleaning has been processed exclusively in a plant

location using the Licensed Processes, Licensed Equipment and Licensed Products.

17. Pursuant to Paragraph 4 of the Contract, Kings Park agreed to pay GreenEarth an "Affiliation Fee based upon the number of Drycleaning Machines that will be using our Licensed Processes or Licensed Products, and the number of Transfer Recovery Dryers used by said machines, determined in accordance with Exhibit B."

18. Pursuant to Paragraph 6 of the Contract, "The term of [the] Letter of Understanding shall begin on the first day of the month following the date your first licensed machine begins operation and, unless terminated sooner (as permitted in the Network Rules), shall continue for an initial term of one (1) year."

19. Pursuant to Paragraph 7 of the Contract, Kings Park agreed that it would "...follow and abide by the Network Rules and any changes to those Rules, as we may post from time to time on our website."

20. Pursuant to Exhibit A of the Contract, the Machine Using GreenEarth Licensed Process Patent is a 2004 Satec, Model B-300/B-440, 40 lb Machine.

21. Paragraph 1.12 of the Network Rules defines "Licensed Products" as "the chemicals, substances, and other material approved from time to time by Licensor for use with Licensed Equipment in Licensed Processes, including, without limitation, products covered by Intellectual Property, products listed on Exhibit C, and improvements, revisions, and enhancements thereof."

22. Paragraph 1.13 of the Network Rules defines "Licensed Processes" as "dry cleaning processes and procedures disclosed in or covered by Intellectual Property that are used in Licensed Stores."

23. Paragraph 1.15 of the Network Rules defines "Licensee" as "any establishment

5

Case 4:16-cv-00662-BP   Document 1   Filed 06/21/16   Page 5 of 17

offering Drycleaning services and which has entered into a Letter of Understanding with Licensor." "A licensee is also called an "Affiliate."

24.     Paragraph 1.16 of the Network Rules defines "Licensor" as GreenEarth® Cleaning L.L.C., a Delaware limited liability company."

25.     Paragraph 1.17 of the Network Rules defines "Marks" as Licensor's registered and unregistered trademarks, service marks, collective marks, certification marks, and applications for registration thereof, together with all unregistered marks and trade dress currently used by Licensor."

26.     Paragraph 1.18 of the Network Rules defines "Patent" as "Licensor's U.S. and foreign issued patents, pending patent applications, and the technology disclosed therein, and includes without limitation all continuations, divisions, continuations in part, reexaminations, inter partes reviews, and reissues thereof."

27.     Paragraph 1.7 of the Network Rules defines "Intellectual Property" as "Licensor's (i) Patents, (ii) Marks, (iii) Trade Secrets, Confidential Information, and Know-How, as provided by Licensor to Licensee from time to time, including, without limitation, information provided in the protected portion of Licensor's web site, and (iv) Copyrights (including registered and unregistered claims of copyright)."

28.     Paragraph 2.2 of the Network Rules provides that "Each Licensee acknowledges that (a) Licensee has read these Network Rules, and (b) Licensee has been given an opportunity to confer with counsel and clarify any provision that Licensee did not understand. Each Licensee understands and accepts the terms, conditions, and covenants contained in these Network Rules as being reasonable and necessary to maintain Licensor's

6

goodwill in the Intellectual Property."

29. Paragraph 5.1 provides that:

"Affiliate shall pay an Affiliation Fee based on: (i) the number of Drycleaning Machines in which Licensee may use the Licensed Processes or Licensed Products, plus (ii) the number of Transfer Recovery Dryers used by said Drycleaning Machines. The annual Affiliation Fee shall be payable in advance for a license period of twelve months duration and the amount of the annual Affiliation Fee shall be determined in accordance with Exhibit B. The annual Affiliation Fee for each Drycleaning Machine or Transfer Recovery Dryer shall be due on the first day of the month following the date each machine begins operating using the Licensed Processes. At such time as the Licensee increases, decrease, or otherwise changes the number and/or type of machines eligible for the Licensed Processes or the Licensed Products, or the number of Transfer Recovery Dryers, Licensee shall provide Licensor notice thereof, and, unless and until Licensor objects, Exhibit A shall be adjusted accordingly, effective as of the first day of the month follow the month in which the said notice is given. Licensor may change the Per-Machine Fee or the Per-Transfer Recovery Dryer Fee used in calculating the Affiliation Fee no more often than annually by providing sixty (60) days' prior written notice to the Licensee."

30. Paragraph 8.1 of the Network Rules provides that "Each Licensee's right to use the Marks is derived solely from the applicable Letter of Understanding and these Network Rules and is limited as provided herein. Any unauthorized use of the Marks by Licensee shall constitute a breach of these Rules and an infringement of the rights of Licensor in and to the Marks. All usage of the Marks by any Licensee and any goodwill established thereby shall inure to the exclusive benefit of Licensor. The Letter of Understanding and these Rules do not confer any goodwill or other interests in the Marks upon any Licensee (other than the right to use the Marks in connection with its use of the Licensed Processes and the Licensed Products) as presented in the Brand Identity Guide."

31. Paragraph 8.2 of the Network Rules provides that "Each Licensee shall use the Marks only in connection with its use of the Licensed Processes or Licensed Products.

7

Case 4:16-cv-00662-BP   Document 1   Filed 06/21/16   Page 7 of 17

All other actions with regard to the Marks are prohibited."

32. Paragraph 10.1 of the Network Rules provides that "If any licensee ....(d) makes any unauthorized use or disclosure of any Confidential Information, makes any unauthorized use of the Marks, or makes any unauthorized use of the Licensed Processes or the Licensed Product; (e) fails to make any payment to Licensor when the same is due; or (f) otherwise violates these Network Rules or breaches the Letter of Understanding, then the Letter of Understanding shall be deemed terminated and the Licensee shall be deemed disaffiliated with the GreenEarth® Affiliate Network upon the expiration of the applicable cure period (as described below) without the need for any further action or notice, provided that the breach or violation is not cured during the applicable cure period to the satisfaction of the Licensor."

33. Paragraph 10.2 of the Network Rules provides that "For the events, breaches, and/or violations described in clauses (a), (b) and (f) of Section 10.1, the cure period is thirty (30) days; for the events, breaches and/or violations described in clauses (c) and (e) of Section 10.1, the cure period is five (5) days...." "In each case in which there is a cure period, the applicable cure period commences upon the date when notice of the event, breach, and/or violation is provided ...."

34. Paragraph 11.1 of the Network Rules provides that "Each Licensee shall pay to Licensor or its Associates within fifteen ( 15) days after the effective date of termination of the Letter of Understanding and disaffiliation from the GreenEarth Affiliate Network all amounts owed to Licensor or its Associates which have accrued, but which are then unpaid."

35. Paragraph 11.2 provides that "After disaffiliation from the GreenEarth Affiliate

Network, each Licensee shall:

(a) Not directly or indirectly at any time or in any manner identify Associates or any business as using the Licensed Processes, Licensed Equipment or the Licensed Products, or as a Licensee of, or as otherwise associated with Licensor, or use any of the Marks or any colorable imitation thereof in any manner or for any purpose, or utilize for any purpose any trade name, trade or service mark, or other commercial symbol that suggests or indicates a connection, affiliation, or association with Licensor or the GreenEarth® Affiliate Network;

(b) Remove all signs, emblems, decals or other items containing any of the Marks and return to Licensor or destroy all forms and material containing any Mark or otherwise identifying or relating to Licensor or the GreenEarth® Affiliate Network;

(c) Discontinue using all of the Licensor's Intellectual Property;

(d) Furnish to Licensor, within thirty (30) days after the effective date of disassociation, evidence satisfactory to Licensor of Licensee's compliance along with the Confirmation of Inactive Status document, with the provisions of this Section 11.2 and Section 11.3 hereof.

36. Paragraph 11.4 provides that "All obligations of Licensor and Licensee under Sections 4, 11.1 through 11.3 and 12.4 of the Network Rules shall continue, notwithstanding termination of the Letter of Understanding and/or disaffiliation from the GreenEarth Affiliate Network.

37. Following expiration of the initial one (1) year term, Kings Park continued to use GreenEarth's Intellectual Property up to and through the present time.

38. Kings Park failed to pay any license fees for the periods from December 1, 2013, through November 30, 2014; December 1, 2014, through November 30, 2015; and December 1, 2015, through November 30, 2016 and, as a result, was assessed late fees.

39. On October 30, 2015, GreenEarth sent a cease and desist letter to Kings Park. A copy of the October 30, 2015, letter is attached hereto as **Exhibit 4.** In the letter, GreenEarth notified Kings Park in writing that it had no right to continue use of liquid silicone as a dry

9

cleaning solvent upon failure to pay fees due under the parties' agreements.

40. On November 30, 2015, GreenEarth sent another letter to Kings Park following a site inspection wherein the parties agreed that Kings Park would pay an immediate $2,000.00 toward the outstanding license fees and would pay the remaining balance due for outstanding license fees within the next several months.

41. On December 10, 2015, King Park paid the agreed $2,000.00 but failed to make any additional payments toward its outstanding balance as agreed.

42. On March 31, 2016, GreenEarth sent yet another letter to Kings Park demanding that Kings Park immediately cease and desist its use of the silicone dry cleaning process and all GreenEarth Marks, and pay the outstanding license fees of $5,750.00 by April 30, 2016. A copy of the March 31, 2016, letter is attached hereto as **Exhibit 5**.

43. As of the filing of this lawsuit, Kings Park has failed and refused to respond to GreenEarth's March 31, 2016, letter or to pay the outstanding license fees or to provide evidence that it has removed the GreenEarth silicone solvent.

44. Based upon information and belief, Kings Park continues to use GreenEarth's Patents, licensed processes and licensed products in direct violation of the agreements and GreenEarth's intellectual property rights, to the damage and detriment of GreenEarth.

45. As a result of Kings Park's continued use of GreenEarth's products and processes, licensing fees are due and payable, with interest, for the 2013-2014, 2014-2015, and 2015-2016 periods. Minus credits for payments made, Kings Park owes to GreenEarth $5,750.00 in licensing fees and late fees plus all accrued and future interest. As of the date of filing this complaint, Kings Park has failed and refused to pay the total amount due. Kings

Park failed to timely cure the default pursuant to paragraph 10.2 of the contracts, or to cure the default at any time prior to the filing of the lawsuit.

46. Kings Park has failed to cease using GreenEarth's Patents as required by 11.2 of the Network Rules and has failed to pay to GreenEarth all amounts owed to GreenEarth as required by 11.1 of the Network Rules.

47. Paragraph 13.5 of the Contract provides for attorneys' fees; accounting fees, expenses and costs to the prevailing party in an action brought to enforce the Contract.

## COUNT I
## BREACH OF CONTRACT

48. GreenEarth hereby restates, re-alleges and incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

49. GreenEarth and Kings Park entered into a written licensing contract wherein GreenEarth licensed Kings Park to use its Marks, Patents, licensed processes and licensed products in connection with the operation of Kings Park's dry cleaning business, and GreenEarth agreed to and did grant Kings Park certain rights in and to those Marks, Patents, licensed processes and licensed products.

50. GreenEarth has performed all of the obligations required of it under the Contract and Network Rules.

51. Kings Park has failed to perform and has breached its obligations under the Contract and Network Rules, including, but not limited to, its failure to cease using GreenEarth's Marks, Patents, licensed processes and licensed products upon termination of the Contract and Network Rules and its failure to pay licensing fees for the time period during which it has continued to use GreenEarth's Marks, Patents, licensed processes and licensed

11

products.

52. GreenEarth has been injured and has incurred damages as the result of Kings Park's breach. The precise amount of damages on the licensing contract regarding Kings Park's "Annual Fee" obligation is $5,750.00 plus interest. The damages suffered by GreenEarth as a result of the breaches of the licensing agreement concerning the unlawful use of GreenEarth's intellectual property rights has not yet been ascertained.

53. GreenEarth has been required to retain the law firm of Post Anderson Layton Heffner, LLP and has incurred attorneys' fees and costs to pursue its rights and remedies in this lawsuit. Pursuant to Paragraph 13.5 of the Network Rules, the prevailing party shall be entitled to reimbursement of its costs and expenses, including reasonable accounting and legal fees, to the extent incurred with respect to the issues for which licensor prevails. GreenEarth seeks recovery of all attorneys' fees and costs incurred herein.

## COUNT II
## DECLARATORY RELIEF

54. GreenEarth hereby restates, re-alleges and incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

55. On or about August 30, 2013, and continuing through March 31, 2016, GreenEarth and Kings Park entered into the Contract and Network Rules wherein GreenEarth granted Kings Park a non- transferable, and nonexclusive license to:

    a. Utilize our Intellectual Property during the Term at your plant locations where dry cleaning is processed using the Licensed Processes, Licensed Equipment and Licensed Products in the number of dry cleaning machines and transfer recovery dryers as shown in Exhibit A enclosed with hit Letter of Understanding

    b. Utilize our Intellectual Property during the Term at your dry store locations as shown in Exhibit A where dry cleaning has been processed exclusively in a

plant location using the Licensed Processes, Licensed Equipment and Licensed Products.

56. Pursuant to the Contract all "Marks" and "Patents" as defined by the Contract are held by GreenEarth exclusively, as are all licensed processes and licensed products. Upon Disaffiliation under the Contract, specifically but not limited to, Paragraph 11.2, Kings Park shall:

  a. Not directly or indirectly at any time or in any manner identify Associates or any business as using the Licensed Processes, Licensed Equipment or the Licensed Products, or as a Licensee of, or as otherwise associated with Licensor, or use any of the Marks or any colorable imitation thereof in any manner or for any purpose, or utilize for any purpose any trade name, trade or service mark, or other commercial symbol that suggests or indicates a connection, affiliation, or association with Licensor or the GreenEarth® Affiliate Network;

  b. Remove all signs, emblems, decals, or other items containing any of the Marks and return to Licensor or destroy all forms and materials containing any Mark or otherwise identifying or relating to Licensor or the GreenEarth® Affiliate Network;

  c. Discontinue using all of the Licensor's Intellectual Property;

  d. Furnish to Licensor, within thirty (30) days after the effective date of disassociation, evidence satisfactory to Licensor of Licensee's compliance along with Confirmation of Inactive Status document, with the provisions of this Section 11.2 and Section 11.3 hereof.

57. On October 30, 2015, GreenEarth sent a cease and desist letter to Kings Park. A copy of the October 30, 2015, letter is attached hereto as **Exhibit 4.** In the letter, GreenEarth notified Kings Park in writing that it had no right to continue use of liquid silicone as a dry cleaning solvent upon failure to pay fees due under the parties' agreements.

58. On November 30, 2015, GreenEarth sent another letter to Kings Park following a site inspection wherein the parties agreed that Kings Park would pay an immediate $2,000.00 toward the outstanding license fees and would pay the remaining balance due for outstanding

13

license fees within the next several months.

59. On December 10, 2015, King Park paid the agreed $2,000.00 but failed to make any additional payments toward its outstanding balance as agreed.

60. On March 31, 2016, GreenEarth sent yet another letter to Kings Park demanding that Kings Park immediately cease and desist its use of the silicone dry cleaning process and all GreenEarth Marks, and pay the outstanding license fees of $5,750.00 by April 30, 2016. *See* **Exhibit 5**.

61. Despite its disaffiliation, Kings Park has failed and refused to comply with Paragraph 11.2 of the Network Rules. Specifically, based on information and belief, Kings Park continues to use its Intellectual Property in direct violation of the contract and GreenEarth's intellectual property rights.

62. An actual controversy has arisen and now exists between GreenEarth and Kings Park concerning their respective rights and duties in that GreenEarth contends that Kings Park continues to use, contrary to law and contract, GreenEarth's Intellectual Property in direct violation of contract and termination of the licensing agreement.

63. GreenEarth seeks a declaration of rights and duties arising under the agreements with respect to its ownership interest in the Intellectual Property.

## COUNT III
## PATENT INFRINGEMENT

64. GreenEarth hereby restates, re-alleges and incorporates by reference paragraphs 1 through 63 as though fully set forth herein.

65. On August 24, 1999, U.S. Patent No. 5,942,007 (the "5,942,007 Patent") was duly and legally issued in the name of GreenEarth Cleaning, LLP. A copy is attached

14

hereto as **Exhibit 1.**

66. The 5,942,007 Patent is presently in force.

67. The 5,942,007 Patent covers the use of liquid silicone as a solvent in dry cleaning using steps 1 through 7.

68. Additional patents containing variations of the 5,942,007 Patent have been duly and legally issued to GreenEarth Cleaning, LLP, as set forth in Paragraph No. 8 herein.

69. Kings Park has used liquid silicone as a dry cleaning solvent since obtaining a license from GreenEarth in 2013.

70. Kings Park is no longer a licensee of GreenEarth and, therefore, is no longer entitled to use GreenEarth's patented process for the use of liquid silicone as a dry cleaning solvent.

71. Upon information and belief, Kings Park has infringed one or more claims of the Patents by continuing to utilize liquid silicone as a dry cleaning solvent and completing steps 1 through 7 of the 5,942,007 Patent, as well as the registered variations on the 5,942,007 Patent.

72. If Kings Park's infringement of the Patents is found to constitute an exceptional case then GreenEarth is entitled to recover its attorneys' fees.

73. Upon information and belief, Kings Park intends to continue in its infringing acts, unless restrained by this Court.

74. Kings Park's acts have damaged and will continue to damage GreenEarth, and GreenEarth has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, GreenEarth prays for judgment and relief against Kings Park as follows:

(a) Finding that: (i) Kings Park has breached the parties' Contract; and (ii) Kings Park has violated 35 U.S.C. § 271;

(b) Declaring, without limitation, that:

    (i) GreenEarth is the exclusive owner of the Intellectual Property; and

    (ii) Kings Park has no present or future right to use of the Intellectual Property;

(c) An order that Kings Park and those in active concert or participation with Kings Park be permanently enjoined from infringing the Patents, from unfair competition with GreenEarth; and from falsely designating the origin of GreenEarth's services;

(d) An award of $5,750.00 in license fees, and interest for Kings Park's breach of contract;

(e) An award and accounting of Kings Park's profits, and any damages sustained by GreenEarth, believed to be in excess of $100,000.00;

(f) An award of any applicable penalties;

(g) Pursuant to 35 U.S.C. § 284, an award increasing damages up to three times the amount found or assessed due to the willful and deliberate nature of the infringement;

(h) Pursuant to the parties' contract and/or 35 U.S.C. § 285, an award of reasonable attorneys' fees;

(i) An award of pre- and post-judgment interest; and

(j) Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

16

Case 4:16-cv-00662-BP   Document 1   Filed 06/21/16   Page 16 of 17

GreenEarth hereby demands a trial by jury on all matters so triable.

          **POST ANDERSON LAYTON HEFFNER, LLP**


          /s/Matthew L. Heffner
By:   Matthew L. Heffner, MO #57251
      12980 Metcalf Avenue, Suite 180
      Overland Park, Kansas 66213
      Telephone: (913) 341-7800
      Telecopier: (913) 341-7804
      *Attorney for Plaintiff*